**James D. ISON, Plaintiff,**

v.

**Elliott L. RICHARDSON, Secretary Health, Education and Welfare, Defendant.**

**Civ. A. No. 70–C–116–A.**

United States District Court,
W. D. Virginia,
Abingdon Division.

May 17, 1971.

H. Ronnie Montgomery, Jonesville, Va., for plaintiff.

Birg E. Sergent, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

The action presently before the court is a complaint brought under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare.

The decision rendered by the hearing examiner on June 4, 1970 became the final decision of the Secretary when the Appeals Council denied the plaintiff's request for review on August 21, 1970.

The hearing examiner's decision denied the plaintiff his claimed disability insurance benefits because the claimant had not established that he was suffering from a disability of such severity that it precluded him from engaging in substantial gainful activity as required by the statute. Plaintiff's claim for disability insurance benefits has been rejected at all levels of the administrative process and he now petitions the district court for review of the Secretary's decision.

The sole issue before the court in this action is whether the Secretary's final decision denying the plaintiff his requested disability benefits is supported by substantial evidence.

In the present case the factual evidence is not in any real dispute. Only the conclusions and inferences to be drawn from the facts are contested. Plaintiff was born November 27, 1932 in Letcher County, Kentucky. He presently lives in a rural area near Keokee, Lee County, Virginia with his brother-in-law and sister-in-law. His wife left home on February 23, 1969 and has the plaintiff's three children with her. Plaintiff has a sixth grade education and no formal vocational training. He owns a tract of land consisting of approximately 54 acres which he hopes to sell to the government. Claimant alleges an onset date of his disability of March 29, 1968 due to a back injury and stomach condition. At the hearing, the claimant also alleged that he was suffering from nervousness and mental impairments.

Claimant's work history is somewhat incomplete and confused. It appears that he did serve in the Army in Korea during 1953–1954 as a jeep driver and artillery crewman, being discharged as a private first class. Before his military service he had engaged in agricultural work in his home community. After his discharge he worked in the sawmills using an air hammer and in the coal mines as a hand coal loader. Thereafter, he married and went to Detroit where he worked in an automobile factory, installing door handles with a rawhide hammer. He returned to Virginia in 1957 and raised tobacco and corn for about three years. In 1960 he started to work for a chain factory in Morristown, Tennessee where he used a hammer on heavy equipment chains. He next worked for a furniture factory where he operated a speed sander. Claimant stated that the strenuous twisting and movement on this job injured his back. The file shows that he underwent two laminectomies in November 1966 and April 1967. After this he attempted to install aluminum siding, but this job lasted only four months. His last job was working in the coal mines as a brakeman until March 1968 when he was laid off. It was in March 1968 that he first applied for disability insurance benefits.

The medical reports concerning the plaintiff's orthopedic ailments are most confusing and contradictory. Dr. Gutch, who performed the plaintiff's laminectomies of November 1966 and April 1967, reported a largely uneventful course of recovery and thought the plaintiff could return to "light" duties in eight to ten weeks from May 29, 1967. On October 29, 1968 Dr. Hillier, a board certified neurological surgeon found that the claimant had very little residual from his back difficulty or disc surgery. Dr. Hillier noted the claimant's "obvious great interest in disability ratings" and was of the opinion that the prognosis for restoring the man to work due to this fact was not very good. Dr. Hillier stated that he could see "no reason why this patient could not be gainfully employed." Dr. Hillier noted that he might not be well suited for mining or house building, but that he felt that there were many other areas where the claimant could function successfully.

Dr. Gutch examined the plaintiff again on April 1, 1969 and at this time he stated the claimant should be given a rating of one hundred percent disability since he is incapable of performing manual labor. Dr. Gutch recited that the plaintiff stated that his low back and hip pain had never subsided and that he had tried several jobs, but was unable to perform them due to the pain. This finding of disability by Dr. Gutch is certainly entitled to great weight but must be weighed in the light of the entire record developed before the hearing examiner.

As a result of the seeming conflict in the medical evidence the plaintiff was examined at the expense of the Social Security Administration by Dr. Horace B. Cupp, Jr., a neurological surgeon, on May 7, 1970. After a thorough examination, Dr. Cupp reported that, contrary to the plaintiff's statements that he was unable to do any manual labor or physical exertion due to his back pain, the claimant had residuals of previous disc surgery with what he considered to be a satisfactory result. There was no evidence of recurrent disease or progressive disorder found by Dr. Cupp. In fact, Dr. Cupp stated that, "this patient is perfectly capable of performing light and medium physical labor and, of course, he is perfectly capable of carrying out any sedentary employment."

Plaintiff was also examined by Dr. Pierce D. Nelson, a psychiatrist with the mental health clinic in Wise, Virginia. Dr. Nelson found that the plaintiff seems to think that his back injury and back pain is the reason why he cannot function well and never will be able to function well. Dr. Nelson found that the plaintiff offered considerable difficulty in arriving at a diagnosis, but that he was suffering from "a psychoneurotic disorder, mixed type, with somatic conversion symptoms relating to old back injury, back surgery." Dr. Nelson felt that he could benefit from intensive psychiatric treatment. The claimant did receive such treatment in the Veteran's Administration Hospital between May and October 1969. This treatment was apparently successful in that he was discharged in good contact, perfectly well oriented with no psychotic ideation and his anxiety neurosis in good remission.

Dr. Harman, a vocational expert, testified at the hearing after an opportunity to study the claimant's file completely. He concluded that considering the claimant's past work experience, age, education and his social history that the claimant would have the capacity and residual skills to engage in light sedentary, medium and heavy work. He concluded that the plaintiff could return to any of his former jobs. He also listed numerous other jobs for which the claimant could qualify. In the light and sedentary range, he listed any number of assembly line jobs which could be performed either sitting or standing. In jobs in the manufacture of shoes there are light jobs like trimming leather which did not require prior experience. Other light and sedentary jobs would be in the manufacture of cigarettes and such jobs were available. The expert also listed jobs in the moderate level which were abundant in the national economy.

It is settled law that the burden of proof rests upon the plaintiff to show his disability to be of such statutory dimensions as to render him unable to engage in substantial gainful employment. Reyes Robles v. Finch, 409 F.2d 84 (1 Cir. 1969); Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965), and Klapatch v. Finch, 297 F.Supp. 976 (M.D. Pa.1969). It is this burden that the hearing examiner felt that the plaintiff had not surmounted. With this finding the court is in substantial agreement and is of the opinion that there is sufficient evidence to support the Secretary's decision denying the plaintiff his claimed disability benefits.

It does appear that the plaintiff has had a problem with his back in the past.

**622**

However, it appears that his post surgical recovery was satisfactory and without complications. Although Dr. Gutch considered the plaintiff one hundred percent disabled, two other doctors, both neurological surgeons, found the plaintiff to be perfectly capable of gainful employment. Such factual determinations are not to be reversed by the district court, but are properly made by the hearing examiner as the trier of fact. In the psychiatrist's report, the plaintiff seemed to feel that he couldn't presently function properly and never would be able to function properly due to his back. Dr. Hillier noted that the claimant had a great interest in disability ratings and prognosis for restoring him to gainful employment was minimal. Also twice during the hearing, the claimant interjected his thoughts about the hopelessness of his employability, while the vocational expert was testifying. The most relevant part of that testimony was when the claimant was referring to psychiatric treatment at the Veteran's Administration Hospital.

> Claimant: I'd like to say something. I've been in the nut house for the last five months and I ain't got no sense, ain't got no sense enough to set up a machine in a job. Even if I was able my mind just comes and goes and that would have something to do with getting a job. The doctors seem to forget that I have been in the nut house for the last five months.

Upon the basis of the opinions of two neurological surgeons stating that the plaintiff was capable of gainful employment, there can be no doubt that the Secretary's final descision denying the plaintiff his benefits was based on substantial evidence.

For the reasons discussed above, summary judgment should be and hereby is granted to the defendant.